Just one second here. All right, I think you said Cowart, is that correct? Cowart. Okay. Ms. Cowart, please proceed. Carola Cowart for the City of Seattle. Good morning and may it please the court. I'd like to reserve five minutes for rebuttal. Okay. Visual blight is a serious problem in cities and one that many local governments care about deeply. Courts have recognized that significant interest for decades. The city's anti-graffiti ordinance here is not an outlier. Many state and local governments prohibit defacement without regard to whether it causes property damage or whether the market's temporary or whether the government is the property owner. That's what the city's done here. The anti-graffiti ordinance prohibits marking on someone else's property without their permission. This is not a hard case because there's not an absolute First Amendment right to deface government property. The city asks this court to vacate the preliminary injunction. I'll plan to start with the First Amendment and then turn to the Fourteenth Amendment. The district court held that there was substantial overbreath and enjoined all applications of the city's anti-graffiti ordinance, but there are no serious questions on the merits as to the facial validity of the ordinance. To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. Did Judge Peckman do any analysis? I know she stated the law that way, but did she do any analysis on applications of the ordinance beyond that which was before her, like private property or things like that? No, Your Honor. She talked about some hypotheticals, but she didn't consider the broad lawful sweep of the ordinance. For example, she enjoined the ordinance and prohibited the city from enforcing it as to the defacement of a private home or a private business, as to spray paint or etching or permanent ink. All of those applications are enjoined, even though no one is arguing that those are unconstitutional applications. Did the plaintiffs in this case argue that any of those were unconstitutional or they just weren't considered by the district court? No, none of those examples. The plaintiffs did not, the appellees did not argue about defacement of private, of a private home. They proffered some examples. For example, writing, painting on a canvas provided by a school or writing, or writing in sand on the beach, the district court talked about it. So there are some, what I would say are not realistic hypotheticals in the record, or writing on stationery provided by your employer. At least some of them were not government property. Stationery provided by employers, someplace there's a some discussion, even though the focus, as I understood as the case was brought, concerned city properties, public property, but there were references along the way, and then the end result was to enjoin enforcement, as best I can tell, in any context. That's right, the injunction is as to any and all enforcement or applications of the ordinance. So here we have overbreaths of some kind. I agree, Your Honor. There are examples that were put forward by the district court and appellees that go to private property, like writing a note of hello on a classmate's notebook. The district court talked about writing in the sand on a beach. None of those examples are realistic. The appellees didn't argue, and the district court didn't conclude that there was any The purposes of facial invalidation must be realistic, not fanciful, and it's not enough to simply conceive of a handful of possible unconstitutional applications, because we're using language, and language has imprecision. That's not what the court's talking about when it's looking at facial invalidation. No, no evidence was part of the case, except for pleadings, right? I didn't have any testimony about anybody. The appellees submitted declarations, but other than that, it's the complaint and their declarations. And the declarations said nothing about the credit cards or the writing on the wedding book or anything, right? No, Your Honor. Appellees' declarations talk about their fear of chilling as to writing and chalk on sidewalks and walls. The district court determined there was a realistic danger of chilling only as to chalking on public walls and walkways, and that's because the district court simply didn't do the required analysis of considering all of the lawful applications of the ordinance. The application as to chalking on intermediate scrutiny, but even if it didn't, that wouldn't matter, because there is no substantial overbreath. There's not a lopsided ratio, which is what United States v. Hansen said is required, and it was legal error to enjoin the ordinance in all of its applications. You go back to it for a moment. I believe the city has challenged the standing of these folks. Are you still making that argument, or do you concede they actually did have standing in all of this? Your Honor, we are arguing redressability. There is a question as to redressability. And that's because of the state ordinance or what? Yes, the conduct that they say they're chilled from, chalking on public walkways and public walls, that does remain a crime under state law. But nobody's ever been prosecuted for that by the city, right? In other words, state law in that setting. That's not in the record. I'm not aware if the city has ever. The city doesn't have authority to prosecute. Certainly the city has authority to make arrests for any violations of state law, but I'm not aware of any evidence that we have enforced that in the past. I guess what I'm thinking about here is, are these folks claiming that because they've been previously arrested, they're worried it's going to happen again and that their freedom to write and chalk in front of the police department and so on is going to be inhibited? They've never been prosecuted with a state, under the state, I guess it's called the Melissa's Mischief Act or whatever it is. And apparently nobody else has either in this city of Seattle. So I'm having difficulty understanding why they don't have standing in this case. The narrow argument we're making is that because their conduct remains illegal, it remains a crime. They fear their rights are going to be inhibited. Isn't that enough in this case for standing purposes? The city would concede it's a close question as to redressability. If I could keep going with that. That's why you're preferring to talk about other subjects. We get that. Thank you, Your Honor. If we do assume that chalking on government property is enough for substantial overbreadth, and it's not. But if we assume that for argument, that restriction would withstand intermediate scrutiny. The city has a significant interest in prohibiting chalking on government property. Visual blight is a serious problem and courts have recognized that for decades. And the district court simply substituted its judgment for that of city council when it said chalking drawings or messages and chalk can hardly be said to constitute visual blight. The city also has a significant interest in choosing what to display, what messages to display or not display on city property. And the prohibition is narrowly tailored. Let me pause. There are a couple of things that concern me here, and one of them may have been touched upon what you just said. I'm not saying it's the focus of this case, although I think it has been identified as a concern. And that is, you say the city has the right to select the messages. Can this ordinance be enforced? And indeed, it's alleged that it's enforced in such a way as to disfavor the views of these plaintiffs and favor somebody who might put up some pro-police message. There is a suggestion of viewpoint discrimination. The appellees do have a claim of selective enforcement in that manner. That claim was not at issue in this preliminary injunction, and it's still being litigated in district court. Here, the district court simply relied on their facial claims. Forgive me, I know this appeal is just on the facial claim, but you say that the selective enforcement is being litigated at the district court now or some other place? Where is that being litigated? In this case. Oh, in this case. In this case. But not on this appeal. Not on this appeal. No, I'm sorry. This appeal presents only the facial claims, but their as-applied claims have not been goes back to district court. Even if we don't agree with you, it still goes back to district court to handle the other portion of the case. Is that right? Yes, Your Honor. Okay. And there's there isn't any evidence in the record that the city has been that the city has set up a permitting regime or enacted any type of a prior restraint. The appellee, the record simply shows that the city treats chalking on walls differently from chalking on public walkways. And it's reasonable for the city to make that decision. Appellees here were arrested for chalking on a wall. There's no allegation the city has ever arrested anyone for chalking on a public walkway. So to get to my colleague's point, is there an allegation that there was, if you will, content discrimination? I know that's not in our appeal, but is there such an allegation that their message was selected, right? Yes, they do allege that. Okay. We just don't have to deal with it. I mean, I remember reading it, I guess, in the complaint, but... Yes. Okay. That's correct. And the record presently doesn't support that allegation. We're dealing totally on a facial challenge, right? That's right. In both claims. Yes, Your Honor. Okay. Under... The ordinance is narrowly tailored because a ban on chalking on public property responds to the precise problem of visual blight, which is what the city was concerned with. Visual blight isn't simply a possible byproduct of chalking on government property. The chalking is a visual blight. And under the rationale and taxpayers for Vincent and Mahoney v. Doe, that makes the ordinance narrowly tailored. Appellees here have many alternate, ample ways to communicate. They can distribute literature or buttons or pamphlets, use bumper stickers. They can march, speak, or hold vigils. Well, but, I mean, if we just focus on the point you're making here and not some of the other arguments you could hand out leaflets or wear a button because unless somebody's going to be there 24-7, they're not in a position to communicate messages 24-7 the way that something written on a wall could. And you hand out leaflets, somebody's got to take the leaflet. I've walked by several people handing out leaflets. I don't necessarily or almost never take them. But if it's up there on the wall, that message is going to be communicated. So I'm not sure you can say the alternatives you propose scratch the itch that have been identified by the plaintiffs. They want to deliver a message in a certain way because it communicates differently than the alternatives you suggested. And those arguments were also made in Mahoney v. Doe and in taxpayers for writing a message on a wall and handing out a leaflet. There is a difference. However, for purposes of intermediate scrutiny, that doesn't, the fact that there is some difference in the prohibited conduct or the prohibited expression and the ample alternative methods, that doesn't then bump this case up into strict scrutiny. We aren't in a situation like City of Ladue where the signs on residential properties, although it wasn't a total ban, it had content based exceptions, but this ban on this venerable form of communication, signs on residential properties, this is, we're not just going to apply intermediate scrutiny. This is something different. It entirely forecloses a medium of expression. This ordinance doesn't entirely foreclose a medium of expression. Chalking on someone's property without their permission is not a venerable means of expression the way we, like the Supreme Court addressed in City of Ladue. What relief now are you seeking from this court? We request this court to vacate the preliminary injunction. That's all? That's all. You want to save, you're getting close to your five minutes, you want to save the balance of your time for rebuttal? Yes, Your Honor. Thank you. Very well. All right, Mr. Flack. Good morning, Your Honors. May it please the court, my name is Nathaniel Flack and I represent Derek Tucson and the other plaintiffs, FLEs in this matter. The district court correctly determined that plaintiffs are likely to succeed on two fundamental constitutional problems with the ordinance here. The district court also determined that plaintiffs had standing to challenge the only ordinance under which they were actually arrested and jailed for harmless writing in the public forum. I want to start, if I may, by addressing the contention that this case is about blight or the city's concern with relating to blight. They were arrested for writing on a stack of concrete blocks that the city had erected in front of the police station, as the district court found blocking the sidewalk, the traditional public forum in front of that police precinct, and for writing in purely harmless, temporary and removable material, the words peaceful protest. And the city concedes here, effectively, that it does not consider chalk writing to be a form of blight, because it concedes that it has a policy of not arresting people for writing in chalk in the public forum, on the sidewalk or in parks. Well, but the injunction we're looking at isn't limited to what you have carefully and somewhat narrowly described. And are we supposed to look for the injunction as it's prepared and issued by the district court, which is somewhat more sweeping? Yes, Your Honor. The district court did enjoin enforcement of subsection A2 of the Seattle Municipal Ordinance at issue here. And the reason it did that is because it found the ordinance facially overbroad and facially vague in violation of the 14th Amendment. And when a provision of law is facially invalid, the standard remedy, the usual remedy, is to enjoin the application of that provision as to anybody. And I think many of the overbroad... Then we have to take on the standards for facial invalidation. And the district court didn't really seem to do that. The standard is most recently articulated in Hansen, or before that in Hill, suggests in so many words that, let's just say, Hansen, the applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. And I didn't see anything the district court that faced up to that. Indeed, the district court's order, I think it was the one that may have talked about the writing in the beach and the writing in a guest book and so forth. And I don't think anybody's really concerned when I go to the beach, which I'm happy to say I live in Hawaii, so it's not as tough as it might be in Seattle. Nobody's under threat of arrest for writing on the beach. So how can the on facial grounds be sustained in the face of the Supreme Court's statements with regard to what you have to show to issue injunctions on facial grounds? A couple of responses to that, Your Honor. First, with respect to the example of writing in sand on the beach, I think Mr. Toussaint and the plaintiffs here would disagree that they don't have to be concerned about arrest. I think if... There's no dispute here that the plain language of the ordinance makes it unlawful to mark or inscribe writing... But have been arrested for writing in sand? We're not aware of that at this time, Your Honor. But the... Strikes me as leaning toward the fanciful side. I mean, the Supreme Court says it has to be realistic. And in immigration cases, we frequently have to distinguish between subjective fear and objectively reasonable fear. I get it, your client may have a reason to say, gee, if I do that, I'm going to get into trouble. Standing back a little bit, that doesn't seem like a real threat. It seems like you're really arguing your as-applied case, which is not before us here. And as my colleague points out, under Hanson, what the district judge did here, a judge we all respect, you know, she didn't do the analysis. She didn't follow Hanson. How do we get around the problem? Again, putting aside the as-applied, we know what your clients are worried about. That's an as-applied issue. But you basically have to show that this ordinance doesn't apply in any way, realistically. And I'm struggling with where the judge dealt with that. Respectfully, your Honor, I don't think the standard is that the ordinance cannot apply in any circumstance lawfully. The question is substantial over breadth. And I think the language in Taxpayers for Vincent, the case that appellants rely on, is when you have a content-neutral provision of law that makes a crime, as this ordinance does of speech in the traditional public forum, the question is whether it is broader than is essential to further the government's asserted interest. And here, that's an aesthetic interest, which we know from cases like Metro Media and from Taxpayers for Vincent itself is a limited interest and an interest that has to be taken with a grain of salt because of the overlap with speech concerns. But the test that the district court... Well, can you go up to this building? This is a public building. Can you start writing on the walls of this building whatever message you want to put on it? No, your Honor. And we have never contended that, and I think it's clear that that's not the case. And in fact, there are many other means at the City of Seattle's disposal to prevent that from occurring and to apply the law where that does occur. There's no suggestion that the walls of buildings themselves are part of the traditional public forum for purposes of writing. And I think it's very important, and I want to direct the Court's attention, if I may, to the photograph of the so-called wall at issue here. With respect to counsel, it seems to me you're kind of making the case for your opponents. You point out legitimately that you can't just go right all over government buildings. And yet, the ordinance on a facial basis covers lots of things. It covers private property, all kinds of things. But the district court has blown that out. I don't know what the applied basis or as to your clients, but blown that out on vagueness and overbreadth basis. And yet, isn't it true that as to both aspects, one can think of many, many, many, many perfectly legitimate examples that the Supreme Court has verified are legitimate on a basically on a facial basis. I'm struggling with how you succeed on the facial basis, which is all that's before us. Help me out, okay? Thank you, Your Honor. And I think there was a question during Appellant's argument about the elimination of an entire means or avenue of speech. And that is an argument that we made below and that we make here. And I think there are cases of this Court and of the Supreme is itself a basis for a finding of overbreadth. Let's take this building. You agree that your client or anybody is not allowed to write on the walls of this building. Why doesn't that pose the same problem you just identified? There's not an alternative. I mean, you're not allowed to post a billboard next to the building. So by saying you can't write on this building, or how does that not raise a problem with the argument you're trying to make for the district court's pretty sweeping striking down of enforcement? The distinction there, Your Honor, is the medium or the avenue of speech. And we cite here the Klein case and the Project Veritas case from last year in this Court. The medium or the avenue of speech versus the location of the speech or the question of whether or not the speech is in the public forum. So in Your Honor's example, to regulate the actual place of the speech as far as in the public forum on a sidewalk versus an actual building is not going to the issue of the medium, the speaker's chosen medium. Counsel, isn't that the whole as-applied issue? I mean, on an applied basis, of course. Those issues are very important. But we're talking about the district judge in this case struck down the entire ordinance on its face, which in effect says there's no way that this could ever be enforced in any setting. That's not really true, is it? I want to just make sure it's clear that the district court enjoined A2. Right. When I say this, I'm talking about what she enjoined here. Yes. So it enjoined only the provision that relates to writing that causes no damage. And so I think there was some discussion. Well, I don't think it says causes no damage. I mean, the fact that if you go up and write like crazy, you may be subject to, what, A1, and indeed that one of the other problems, and maybe I should take this up with the city, the exceptions, the affirmative defense defined to A1 isn't the same for A2. So, I mean, I guess I'm saying in simply a different way the same thing that Judge Smith is raising, which is that when you have a facial invalidation or inability to enforce, the risk is you throw them maybe along with the bathwater. And if there is a core that can properly be enforced, why isn't the instruction of the Supreme Court in cases most recently like Hansen telling us, no, you don't do it that way. You can't facially invalidate if, in fact, there is a legitimate core that should properly be enforceable. Your Honor, I think to clarify my prior answer, I think to the extent that any writing does cause damage, that writing is still a crime in the city of Seattle under A1, and that is not infected by the affirmative defense. The problem there is damage. I mean, from my perspective, it can be chalk and you're writing on the wall of this building or of City Hall or of the Capitol building or of the White House. There are certain structures that we try to take off limits. And I think the government's entitled to do that. And so to say that Seattle can't enforce against the Nakamura Courthouse in Seattle because the statute is facially unenforceable invalid, that seems to me to be overreach of a different kind. Why isn't that going to run afoul of the city? Because I think, Your Honor, first, the city does have other means of enforcing the notion that you can't write on a building. So there are trespass laws and ordinances they can enforce. There is the state malicious mischief law that they've talked about in their briefing that they can arrest under. And there are a variety of other provisions in the municipal code and in the state law of Washington they can use to address these concerns. What the record shows here is that the ordinance is specifically used to punish people like the four plaintiffs here who write messages in a harmless way in the public forum. Again, counsel, you're an able lawyer and you get this well, I understand. But you're making an as-applied argument. We're talking about an ordinance that's been, the portion of an ordinance that's been voided in its entirety. And I'm having trouble with that. Let me switch to a slightly different subject. The district court's vagueness analysis focused a lot on whether there was, the term damage was not defined. There was no word damage in the ordinance in the first place. So how do we deal with that? Yes, Your Honor. I think that the key to the district court's vagueness analysis is the discretion that the breadth of the ordinance, including after its amendment, the addition of this express permission limitation, the extreme level of discretion that that gives to law enforcement officers to decide when they're going to write for, when they're going to arrest for expressive activity that is, as the city concedes, generally not arrestable. And as far as we know, only arrest when they disagree with the message expressed. As to the particular portion of the opinion that Your Honor has pointed out, I'm not sure how to interpret the, that sentence of the opinion except to say that I think it goes to the difficulty that the public would have in understanding what they can and can't do under this ordinance. I think if a member of the public wants to open up the municipal code and understand, is it a crime or not for me to go to the park or the sidewalk in front of my house and write about a candidate that I support or an issue that I care about, they're going to look at this ordinance and there's not going to be any guidance for them about whether or not they really can do that or not. The only thing that they're going to have now is the idea that it's okay if there's express permission, but otherwise any writing in chalk on the sidewalk is a crime. But the problem with that, and this is, I think, the focus of the district court's analysis of the vagueness issue, is that that just delegates complete control over what is illegal and what is not to the officer on the beat who happens to be walking by. Well, with respect, I mean, we have separation of powers. The police are part of the executive branch, right? Yes, sir. And I don't think you've made separation of powers arguments here, have you? No, Your Honor. You're saying that the police have no prosecutorial discretion? You're going to, you've had enough trouble in Seattle with police as it is, you're going to basically say, hey, you have no discretion to do anything, to charge anybody, because somebody might misinterpret it. Come on. Let's be serious here. Are you really saying that the discretion in this case is sufficient on its face that the whole ordinance gets thrown out? Yes, Your Honor, because, and of course, police have discretion about when to arrest and the executive has discretion about when to prosecute, and we don't differ on those principles. The reason why the discretion is excessive here is because the language of the ordinance makes, by its plain meaning, makes a gross misdemeanor punishable by up to a year in jail of conduct and expressive activity that people, normal people, engage in all the time and understand to be innocent and don't consider criminal, and the city does not, in fact, consider criminal, yet they have a law on their books that says that. That's an important distinction there. And the district court, although it didn't incorporate the laundry list, did make an explicit reference in its order with regard to the vagueness argument, which is what we're on now. Apparently, the city asked the court to strike Plaintiff's List of Potentially Innocuous Conduct listed in the reply. The court finds these examples respond appropriately on the vagueness issue. When I look at that laundry list, we have drawing in the sand, we have writing on a friend's scrap of paper, we have writing or printing on paper implied by one's employer. I mean, you're familiar with the list. As to which, it seems to me, the Supreme Court's admonition about be realistic strikes home. Is anybody really expecting the Seattle Police Department to go out and arrest somebody for writing on a restaurant credit card slip or writing on a piece of paper given to you by a friend? I think the answer is pretty clearly no, and yet what the district court decided in referencing this list suggests that, nope, no, somebody somewhere may think that writing on a friend's scrap of paper violates this ordinance, that makes the ordinance vague. And that doesn't seem to me at all consistent with what the Supreme Court has told us about realistic examples. Your Honor, that all may be true. It's also the case that our clients, Mr. Toussaint and the other plaintiffs here, were shocked to be arrested for writing in chalk. And I think many people would be shocked and are shocked to hear that you could be arrested and booked into jail on a gross misdemeanor charge for the use of ordinary children's sidewalk chalk. I don't think it was the chalk that was the problem. The problem is the subway car, the metro cars in, well, it started with New York, but I guess it's spread. You know, somebody wants to put up a message. Other people may not want to see something scrawled on the side of the car or, in this case, on the side of a building barrier. And so why can't the city say that's where the line's drawn? Yes, and I would direct the Court's attention to the Klein case in this regard. I think many of the issues that have come up in this challenge and this appeal are addressed in the Klein case. We cite it in our brief, including at page 36. Is there really a dispute here? The city wants the relief to go back down and set aside the Court's order. So that's what you want, too, right? No, Your Honor. We're asking this Court to affirm the District Court's preliminary injunction through the dependency of this action. In the Klein case, the Court addressed an ordinance that prohibited the plaintiffs from placing leaflets on private automobiles, cars that were parked on the street in the public forum. And the District Court denied the preliminary injunction, and this Court reversed. It rejected aesthetic concerns that the city had raised based on leaflets being unsightly, supposedly. It rejected the notion that the property rights of the car owners overrode the First Amendment rights of the leaflet. That was an as-applied case, was it not? It's not an official challenge. I don't believe so, Your Honor. I believe that the Ninth Circuit in that case directed the District Court to enter injunction against the enforcement of the ordinance. I realize I'm out of time. No, you are. Let me ask my colleagues whether or not they have additional questions. I thank you very much for your argument, Counsel. Thank you, Your Honor. So the city has a time for rebuttal. Thank you, Your Honor. I'll briefly address the case that appellees were just discussing, Klein v. City of San Clemente. That involved an anti-littering ordinance, which prohibited the leafleting of unoccupied vehicles parked on city streets. And that failed intermediate scrutiny because the city said its interest was anti-littering. But instead of banning littering, it banned placing leaflets on windshields. However, there was no evidence in that case about the connection between the problem of litter and leafleting on cars. So that case simply doesn't apply here. That was a narrow-tailored issue. Challenge to a narrower ordinance. So I think it was a facial challenge. Yes, it was a narrower audience. So the problem that I've said the Supreme Court has defined at least wasn't as clearly presented there. It wasn't fanciful examples. The ordinance was specifically aimed at putting leaflets on cars. Precisely. That was the only application that there was of that ordinance. And that was the one that the Court held failed intermediate scrutiny. Here, we have many, many constitutional applications, a very broad lawful sweep, and only concerns by the District Court as to chalking. Judge Smith asked a question of Apeliz about why the word damage appears in the District Court's order. I believe I can answer that. The District Court initially inadvertently enjoined two sections of the city's code, the anti-graffiti ordinance and then also A-1, which does have the word damage in it. Then when the Court corrected that error, it didn't go back and change the underlying substance in its opinion. Yes, I understand that error because I got caught in the same thing between A-1 and A-2. But it does raise a question that the defense is, well, there's now only an affirmative defense as the ordinance was revised to A-1, the damage one, the property damage one. A-2 puzzles me as to the affirmative defense was taken out and put into the main text, if you are understanding what I'm trying to refer to inelegantly. I was wondering, why is express permission required? I can imagine circumstances where your neighbor has said, fine, this wall is open territory. There are areas of Honolulu, for sure I know, areas where there's a standing invitation, come right on our walls. There was even an exhibition at a museum in Honolulu a couple years ago. Why does the city ordinance require express permission rather than a reasonable belief that there's permission or more like the exception in one, reasonably believe he had a lawful right to damage, why can't there be a reasonable leave to permission to put your chalk or paint or whatever on the given property? There's nothing in the record about why in 1996 that language was used. However, one possible reason is that these type of, if there were a wall in the city with a because the property owner's not cleaning up that graffiti, that must be implied permission. Therefore, I can go add my graffiti to it. These kind of graffiti walls. In theory, if the owner said later, oh yeah, that's fine, I hadn't given express permission, you would, at least by the text of the ordinance, have a violation. The express, I don't believe here is the same as in the contract law setting. Black's Law Dictionary defines express as clear and unmistakable permission granted by words or actions, so it doesn't have to be written in this context. It just means clear and unmistakable permission, whereas Black's Law Dictionary defines implied permission as you infer the permission from words or actions. Now, I confess, I'm not entirely sure. I got into this when I was thinking about why it was set up that way, but I don't know what that leads to. I just was struggling with it. For purposes of vagueness, I believe express permission is probably clearer than if the ordinance also covered implied permission. It's clear, but the problem is that the potential overreach seems to me substantial, because if you've got an owner that really just doesn't pay any attention, there can be a reasonable belief, gee, this must be okay, even though the owner hasn't given express permission would constitute a violation, whereas a reasonable belief might not. I don't believe there's evidence in the record about chilling or past enforcement in that arena. The ordinance is clear. If you want to write on someone else's property, you simply have to get permission, and there's nothing unclear or vague about that. Your time is up. Let me ask my colleague whether either has additional questions. We're sure you have lots more to say, but... We'll tell the city to pay you for an extra minute of effort. That's right. You probably work for them, though, right? So you're good. Thanks to both counsel for your argument. The briefs case just argued is submitted, and the court stands adjourned for the day.
judges: Siler, CLIFTON, SMITH